MATTER OF P—

In DEPORTATION Proceedings

A–12027375

*Decided by Board January 31, and August 1, 1961*

Deportability—Crewman found ashore after refusal of landing privileges.

"Entry without inspection" charge held inapplicable to alien crewman who goes ashore without permission after being inspected and refused landing privileges. Deportability sustained under sections 241(a)(2) and 252(a) of Immigration and Nationality Act on finding that respondent is in the United States in violation of law.

CHARGES:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entry without inspection.

Lodged: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—In the United States in violation of law; section 252(a) and section 254(a) [8 U.S.C. 1282(a) and 1284(a)], entered after refusal of permission to land.

**BEFORE THE BOARD**
(January 31, 1961)

**DISCUSSION:** This case comes forward on appeal from the order of the special inquiry officer dated August 25, 1960, denying the application for voluntary departure in lieu of deportation and directing deportation on the charge stated in the order to show cause.

The respondent is a native and citizen of Italy, 26 years old, male, who last arrived at the port of Baltimore, Maryland, on April 18, 1958, as a member of the crew of the SS. *Transglobe.* He testified that he was inspected upon arrival by two officers, one of whom he thought was a public health officer and by another man who asked him if it was his first sailing and if it was the first time he touched in America. However, he denied that he was told anything one way or the other with respect to whether he was granted permission to go ashore. He testified that this was his first trip as a seaman, that he had been permitted to go ashore in Brazil without any documents and that he was not aware of the necessity of having a landing permit in order to go ashore.

However, the respondent acknowledged that he asked an officer of the ship whether he could go ashore for two or three days and was

368

told that he was required to obtain permission from the immigration authorities. Somewhat inconsistently, he stated that he thought he required no permission to go ashore just for the day in order to obtain a beer. The respondent's story that he went ashore for the purpose of obtaining a beer does not appear to be supported by his actions subsequent to going ashore. The record contains evidence that the respondent was inspected and was refused permission to go ashore. In view of the fact that the respondent appears to have undergone inspection, it is believed that the charge contained in the order to show cause is not sustained.[1]

There is no doubt, however, that the respondent is unlawfully in the United States. The case will be remanded for the purpose of lodging an appropriate deportation charge and for such other action as may appear proper.[2] Counsel has taken objection to the questioning of the respondent by the special inquiry officer, but we believe it is clear that this was done merely for the purpose of clarification and not, as counsel alleges, for the purpose of prosecution.

**ORDER:** It is ordered that the order entered by the special inquiry officer that the alien be deported from the United States be withdrawn and that the case be remanded for the purpose of lodging the appropriate deportation charge against the alien and for such further action as is necessary to dispose of the case.

### BEFORE THE BOARD
(August 1, 1961)

**DISCUSSION:** This case comes forward to the Board on certification. On January 31, 1961, the case was before us on appeal. The issue then was whether the charge in the order to show cause was sustained by the record. We decided negatively. The case was remanded to have an appropriate charge lodged, and for further consideration. The Service, after further hearing, has lodged a charge under the provisions of section 241(a)(2) of the Immigration and Nationality Act, in that the respondent is in the United States in violation of law, having arrived as a crewman and entered the United States without permission to land pursuant to sections 252(a) and 254(a), Immigration and Nationality Act. The lodged charge has been sustained.

Counsel for the respondent does not except to the validity of the lodged charge. Nor does he contest the finding of deportability.

---

[1] See *Matter of C—V—*, 1—385.

[2] The respondent was inspected upon arrival and found not to be a nonimmigrant alien crewman. He claimed no other nonimmigrant status. Every alien is an immigrant unless he qualifies as a nonimmigrant (8 U.S.C. 1101 (a)(15)). All immigrants must present immigration visas (certain exceptions are not applicable here). Admittedly, the respondent did not have an immigrant visa.

369

He concedes that the alien is in the United States without lawful immigration status. He has added that the respondent was not told he was detained on board the vessel on which he arrived and did not know the precise law he violated by effecting entry.

Service counsel has explained that the charge we suggested in our decision of January 31, 1961, could be lodged (no immigrant visa at entry) was not lodged by the Service because the procedure and the terminology therein was less understandable to the respondent than the language contained in the charge which has been lodged in the proceedings. The examining officer has submitted a brief in support of the special inquiry officer's decision.

The respondent, a native and citizen of Italy, age 26, male, last arrived in the United States at Baltimore, Maryland, on April 18, 1958, as a crewman on the SS. *Transglobe*. Upon arrival he was "examined" (inspected) by two men (immigration officers). He was not given a landing permit nor was he informed, according to his testimony, that he could not go ashore while the vessel was in port. He had only 40 days' experience as a seaman. It is alleged by the alien that he did not realize that a landing permit was required at a port of this country in order to go ashore. Service records show that the respondent was examined by Service officers on April 18, 1958, at Baltimore, Maryland, and refused permission to enter for shore leave. The alien's testimony is unclear as to the procedure he followed, after he was examined by immigration officers, to leave the vessel. In all events, we know he went ashore without permission in violation of immigration laws and regulations for the enforcement thereof (sections 252 and 254, Immigration and Nationality Act). It is conceded that he is now within the United States without lawful immigration status (section 241(a)(2), Immigration and Nationality Act).

It is our opinion that the charge lodged in the hearing is proper as a matter of law. The special inquiry officer's conclusion is that the evidence supports the charge, and we concur in that finding. In fact, the alien has made no defense to the charge of deportability. He contends, however, that he did not knowingly and intentionally violate the law when he entered the United States, alleging that he did not know permission to land had been refused. The alien's failure to produce affirmative evidence of any character that he was authorized to land, his failure to rebut the Government's evidence that he was refused shore leave, and the fact that he has not clearly explained the manner in which he left the vessel is sufficient evidence, in our opinion, that he did not enter the United States as a *bona fide* seaman. The reason shore leave was refused is immaterial here since the granting thereof is a matter for determination by the officer who inspected this alien at time of arrival. *Savelis* v. *Vlachos*,

248 F.2d 729 (C.A. 4, 1957). There appears to be no issue of law or evidence relating to deportability that requires further discussion. Deportability is sustained by reasonable, substantial and probative evidence.

With respect to the application for relief, the special inquiry officer has found the respondent statutorily eligible for voluntary departure and has denied relief as a matter of administrative discretion. Counsel pleads that relief be granted because the respondent is married to a legally resident alien who is ill and requires surgery; also, because the alien is entitled to third preference quota visa status.

We have reviewed the pertinent evidence and the decision to determine if there has been abuse of discretion. The respondent is age 26. He has been in the United States about three years. At the time of arrival, and illegal entry, he had been a crewman for a period of only 40 days. He left the vessel and remained here in violation of law. He was married to a legally resident alien spouse on May 8, 1958, by civil ceremony, and in October 1958 by religious ceremony. The record shows that the spouse is ill and will require surgery, but that she is presently able to work as a part-time sewing machine operator. Although the respondent has no criminal record, and his behavior and conduct during the period he has been in the United States are good, the special inquiry officer finds that some of his testimony lacks credibility. The special inquiry officer has properly recognized and considered the equities. Since we find no errors and no abuse of discretion, the special inquiry officer's decision, which under the factual situation and the pertinent regulations is final, will be affirmed.

ORDER: It is ordered that the decision of the special inquiry officer be affirmed.